JUDGE KATHLEEN CARDONE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2023 APR -3 PM 3:37

|  |  |
|---|---|
| YAZMIN GONZALEZ,<br><br>    Plaintiff,<br><br>v.<br><br>BURGER LAW, LLC, a Missouri Limited Liability Company and **Consumer Legal Request,** an unknown business entity<br><br>    Defendant. | §§§§§§§§§§§§§ |

EP23CV0135

## COMPLAINT

Pro Se Plaintiff Yazmin Gonzalez files this Complaint against Defendants Burger Law, LLC and Consumer Legal Request for violations of (1) the federal Telephone Consumer Protection Act ("TCPA") and its regulations and (2) the Texas Business and Commerce Code ("TBCC") law governing telephone solicitation, alleging as follows:

### INTRODUCTION

1. Beginning in March 2023, Plaintiff began to receive a barrage of illegal telemarketing calls made on behalf of Defendant Burger Law LLC ("Burger") by Consumer Legal Request ("Consumer Legal"), an unknown anonymous telemarketer soliciting Camp Lejeune legal representation.

2. Plaintiff seeks redress under the TCPA and TBCC, demanding that the calls stop.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Counts I under 28 U.S.C § 1331, because the claims arise under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227. *See*

1

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (holding that federal courts have federal question jurisdiction over private actions brought under the TCPA).

4.  The Court has supplemental jurisdiction over Counts II under 28 U.S.C § 1367.

5.  This Court has personal jurisdiction over Burger because Defendant purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship between Defendant's purposeful contacts with Texas and the litigation:

    a)  Defendant targets Texas when marketing legal representation and regularly conducts business in this District, including telephone solicitation.

    b)  Its agent Consumer Legal Request, called Plaintiff's El Paso-area phone number (with area code 915) to generate leads for Burger's legal services.

    c)  These calls to Texas injured Plaintiff in Texas, creating a causal link among Defendant, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

6.  This Court has personal jurisdiction over Consumer Legal because Consumer Legal purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship between Consumer Legal's purposeful contacts with Texas and the litigation:

    a)  Consumer Legal targets Texas when marketing legal representation and regularly conducts business in this District, including telephone solicitation.

    b)  Consumer Legal called Plaintiff's El Paso-area phone number (with area code 915) to generate leads for Burger's legal services.

    c)  Consumer Legal's calls to Texas injured Plaintiff in Texas, creating a causal link among Defendant, the forum, and the litigation that exceeds the non-causal

affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021

7.  Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES AND OTHER ENTITIES

8.  Plaintiff YAZMIN GONZALEZ ("Plaintiff" or "Gonzalez") is a natural person domiciled in Texas who received the incessant and intrusive calls made on behalf of Defendant Burger Law LLC to market legal representation for a Camp Lejeune claim.

9.  Defendant BURGER LAW LLC ("Burger") is a limited liability corporate law firm organized and existing under the laws of Missouri and can be served via registered agent Gary Burger, 500 N Broadway, Ste 1860, Saint Louis, Missouri 63102. The principal office address is 500 N Broadway, Ste 1860, Saint Louis, Missouri 63102.

10. Defendant CONSUMER LEGAL REQUEST ("Consumer Legal") is an unknown business entity operating the web address https://www.consumerlegalrequest.com. This website does not list any ownership or contact information. Consumer Legal's information will be revealed during discovery.

## FACTUAL ALLEGATIONS

11. The TCPA was enacted to protect consumers' privacy interests by prohibiting unwanted, repetitive, and invasive telephone solicitations.

12. Plaintiff successfully registered her phone number ending in 2376 on the National Do-Not-Call Registry ("DNC") on February 15, 2022.

13. Burger is a law firm licensed that markets itself as "Leading efforts to get justice for water contamination victims at Camp Lejeune."

3

14. Burger hired Defendant Consumer Legal to place telephone solicitation phone calls because Burger is barred by ethics from directly placing unsolicited phone calls on their own behalf.

15. On March 31, 2023, Plaintiff searched the Texas Secretary of State website at https://direct.sos.state.tx.us/telephone/telephonesearch.asp and did not find a valid Texas telephone solicitation registration for either Defendant Burger or Defendant Consumer Legal.

16. Defendants Burger and Consumer Legal do not qualify for an exemption from the registration requirement imposed by Tex. Bus. Com. Code 302.101 for telephone solicitation.

17. Plaintiff is the subscriber to a cellular telephone service for this phone number, uses the phone for residential purposes, and does not use the telephone for any business purposes.

18. On or about March 6, 2023, Plaintiff began receiving such calls from Defendant to her El Paso-area cellular telephone number 915-XXX-2376.

19. Call #1. On March 6, 2023, Plaintiff received a missed phone call displaying 888-487-2154 on the caller identification.

20. Call #2. On March 20, 2023, Plaintiff received a phone call displaying 915-895-3591 on the caller identification. Plaintiff answered the phone and a telemarketer with a foreign-sounding accent began to solicit Plaintiff for Camp Lejeune legal representation. Plaintiff disconnected the call.

21. Call #3. On March 20, 2023, Plaintiff received another phone call, just minutes after the phone call in paragraph 20. The phone call displayed 603-709-6261 on the caller identification. Plaintiff answered the phone and it was the same telemarketer from paragraph 20. The telemarketer once again solicited Plaintiff. Plaintiff played along in order to find out who was soliciting Plaintiff and harassing Plaintiff with unwanted callbacks.

22. Plaintiff was live-transferred to "Anthony" who stated he was from "Consumer Legal Request." Anthony sent Plaintiff a retainer to hire Burger to represent Plaintiff in a Camp Lejeune lawsuit.

23. Call #4. The contract "Anthony" sent Plaintiff was conveyed to Plaintiff already signed. Plaintiff did not have any interest in legal representation and did not know why Anthony had signed a retainer on her behalf. Plaintiff sent an email to Anthony asking why she received a signed contract. Anthony then called Plaintiff and informed Plaintiff he was going to send another unsigned contract. Plaintiff did not request another contract.

24. Call #5. Anthony called Plaintiff with the phone number 888-487-2154 showing on the caller ID and informed her had sent the unrequested contract. Phone number 888-487-2154 belongs to Defendant Consumer Legal.

25. Anthony emailed Plaintiff a contract to retain the law services of Defendant Burger for representation in the Camp Lejeune contamination suit.

26. Call #6. On March 20, 2023, Plaintiff received a phone call showing 888-847-2154 on the caller identification. Plaintiff answered the phone and "Mario from Consumer Legal" attempted to get Plaintiff to sign the contract. Plaintiff informed Mario she was not interested and asked to not be called again.

27. Plaintiff received at least (6) telephone calls on behalf of, and by, Defendant Burger from a number of various phone numbers.

28. TABLE A below displays calls to phone number ending in 2376 made to Plaintiff.

TABLE A:

| **Number:** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1. | 03/06/2023 | 3:01 PM | 887-487-2154 | Missed Call |

5

| 2. | 03/20/2023 | 9:34 AM | 915-895-3591 | Telemarketer soliciting Camp Lejeune representation. Hung up phone. |
| 3. | 03/20/2023 | 10:00 AM | 603-709-6261 | Live transfer to Anthony |
| 4. | 03/20/2023 | 11:15 AM | 214-646-6461 | Sent a signed contract from Burger |
| 5. | 03/20/2023 | 11:49 AM | 888-487-2154 | Call from Anthony |
| 6. | 03/20/2023 | 4:40 PM | 888-487-2154 | Mario from Consumer Legal |

29. Plaintiff did not have an established business relationship with Defendants, nor did Plaintiff consent to any of these calls.

30. Plaintiff did not provide her phone number to Defendant at any point.

31. Defendants' placement of multiple calls within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC Registry since March 2022, violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

32. Defendants' violations described in paragraph 31 were knowing and willful because Burger had "reason to know, or should have known, that [its] conduct would violate the statute." *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001). Bad faith is not required.

33. Burger is a law firm established in 2015 with nearly eight years of experience and is well-versed in the requirements of the law.

34. Burger knew or should have known that its conduct would violate the TCPA and its regulations because Burger is a law firm with an understanding of the requirements under the TCPA. Yet, despite this knowledge, Burger made the conscious decision to violate the TCPA and TBCC.

35. Burger knew or should have known the requirements for making TCPA-compliant telemarketing calls and thus knew or should have known that the calls complained of herein violate the TCPA and its regulations.

36. Burger knew or should have known Texas requires telephone solicitation registration when making calls from or into Texas and thus knew or should have known that the calls complained of herein violate the TBCC and its regulations.

37. Burger represents consumers domiciled in Texas and is well aware of Texas' consumer protection laws.

38. Burger knew law firms and attorneys are barred by ethics from direct solicitation of prospective clients with whom no preexisting relationship exists. Burger hired Consumer Legal as a means to sidestep this prohibition.

## VICARIOUS LIABILITY OF BURGER FOR CONSUMER LEGALS' TCPA VIOLATIONS

39. Burger is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as Consumer Legal. *In re Joint Pet. filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 (2013).

40. Burger markets legal representation through direct telephone solicitation by its hired telemarketer Consumer Legal, who acts on its behalf. Consumer Legal transfers live, hot leads to Burger and Burger accepts the leads. Consumer Legal was Burger's agent when it made the prohibited calls on behalf of, and with the actual authority from, Consumer Legal pursuant to a contract that governs Consumer Legal's telemarketing for Burger.

41. Burger directs, controls, authorizes, and pays Consumer Legal to generate live-transfer leads for Defendant Burger's legal services through telephone solicitation. Moreover, it requires,

authorizes, or at least permits Consumer Legal to solicit explicitly for Camp Lejeune representation.

42. Burger sets the criteria for qualifying leads, which Consumer Legal must follow, and Consumer Legal live-transfers leads qualified on those criteria exclusively to Burger. Plaintiff is unaware of the qualifying thresholds, but the salient question is whether the potential client was stationed at Camp Lejeune, when they were stationed at Camp Lejeune, and whether there was some type of cancer or physical impairment that manifested as a result of the Camp Lejeune stay.

43. On information and belief, Burger writes or at least approves the call script Consumer Legal uses when qualifying leads for Burger.

44. Consumer Legal's telemarketers are Burger's associates and do nothing to disturb the impression that Consumer Legal's telemarketers work for, and speak and act on behalf of, Burger.

45. From Consumer Legal's telemarketer's initial call through Defendant Burger's acceptance of a completed representation application, the telemarketing of Burger's legal representation constitutes a singular, coordinated marketing effort devised, authorized, directed, and controlled by Burger, the principal, with Consumer Legal acting as Burger's agent.

46. Consumer Legal, acting with actual authority, made the prohibited calls, qualified Plaintiff according to Burger's criteria, and then live-transferred Plaintiff to Burger's advisor to continue marketing legal representation.

**INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES TO PLAINTIFF**

47. Plaintiff has been denied the use of her phone, enjoyment of his phone, and had the functionality of her phone decreased because of unnecessary charging, erosion of phone memory, and had her privacy invaded by the harassing telemarketing calls.

48. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

49. Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed on behalf of Defendants.

50. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to Plaintiff.

## COUNT I – DNC Violations
### Violation of the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)
### (Against All Defendants)

51. Plaintiff incorporates by reference each and every paragraph of this complaint as if fully set forth herein.

52. The TCPA prohibits telephone solicitation of residential telephone subscribers whose numbers are registered on the National Do-Not-Call Registry, 47 U.S.C. § 227(c)(5).

53. Even though Plaintiffs number has been registered on the National DNC Registry since March 2022, Burger made unsolicited telephone solicitations to Plaintiff's residential telephone line, without Plaintiff's consent, and thereby violated 47 U.S.C § 227(c) and 47 C.F.R. § 64.1200(c) (the "DNC Violations").

54. Plaintiff suffered the following injuries from each and every ATDS Violation: invasion of privacy; intrusion on Plaintiff's right of seclusion; occupation of Plaintiff's telephone line by unwelcome calls, rendering the phone unavailable for legitimate calls; inconvenience; loss of usefulness of Plaintiff's phone; unnecessary expenditure of Plaintiff's phone's battery power; degradation of the battery; and trespass to Plaintiff's chattel, namely her cellular telephone.

55. Under § 227(c)(5), Plaintiff is entitled to receive up to $500 in damages for each violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c). Because the violations were knowing and willful, *see* Paragraphs 31-33, the Court may award up to $1500 per violation.

56. Accordingly, Plaintiff seeks and order under Section 227(c)(5) awarding $1500 for each DNC Violation.

## COUNT II
## Violation of Tex. Bus. Org & Com. Code § 302.101
### (Against All Defendants)

57. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

58. In addition to the harm of illegal telephone solicitations, Texas law recognizes the difficulty of holding businesses that make them accountable.

59. To address that problem, Texas law requires "sellers" engaged in telemarketing to register with the state and provide the public the information necessary to hold a seller accountable: the seller's legal name, any assumed names, any organizational documents, the address for the principal place of business, each phone number used in telemarketing, names of officers and directors, and the name and address of the agent for service of process. Tex. Bus. & Com. Code § 302.001. *et. seq.*

60. The registration requirements reflect an important public policy of Texas: to "protect persons against false, misleading, or deceptive trade practices in the telephone solicitation business." *Id.* § 302.003. The law must be "liberally construed and applied to promote [that] purpose." *Id.* Moreover, sellers must post financial security to ensure their compliance, and an "attempted waiver of a provision of this chapter is void." *Id.* §§ 302.004, 302.107.

61. Chapter 302 defines a "seller" as a "person who makes a telephone solicitation on the person's own behalf." Id. § 302.001(5), A "telephone solicitation" is "a telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item." Id. § 302.001(7). "Item," in turn, means "property or a service." Id. § 302.001(1). Legal representation is a "service." Id. § 302.001(1).

62. Burger is a "seller" because it makes telephone solicitations on its own behalf through salespersons, including both (a) those it "employ[s]" – Consumer Legal and those it 'authorize[s] – such as third-party telemarketers. Id. § 302.001(4)-(5). The "items" it induces purchasers to receive is legal representation. And the called parties are "purchasers" because they are "solicited to become…clients for [the legal representation].' Id. § 302.001(3).

63. Burger engages in "telephone solicitation" because they initiate telephone calls to induce consumers into hiring them for legal representation. Id. § 302.001(1), (3), (7).

64. Because "a person makes a telephone solicitation if the person effects at attempts to effect a telephone solicitation," telephone calls initiated by Consumer Legal are attributable both to them individually and to Burger. See Id. § 302 (emphasis added).

65. Texas law requires those whose products or services are offered through telephone solicitation from or to a location located in Texas to provide information about their telemarketing activities and obtain a registration certificate from the State. Tex. Bus. & Com. Code § 302.101. The purpose of the requirement is to "protect persons against false, misleading, or deceptive practices in the telephone solicitation business." Id. at 302.003. Burger effected the solicitations because it brought about and made them happen by employing or authorizing these salespersons to make the telephone solicitations and paying them to do so. See Effect, Black's Law Dictionary (11th ed. 2019) ("To bring about; to make happen.").

66. Because the telephone solicitations were made to Plaintiff, a "purchaser located in this state" of Texas, Burger was obligated to comply with the registration and related requirements of Texas Business & Commerce Code § 302.001, *et seq.*

67. Defendant failed to comply, committing numerous independent violations of Texas law, including at least the following:

   a) Failure to obtain a certificate of registration for the business locations(s) from which each of the telephone solicitations was made;

   b) Failure to post the registration certificate in a conspicuous place at each such location;

   c) Failure to post in close proximity to the registration certificate the name of each individual in charge of the location;

   d) Failure to file an addenda providing the required registration information for each salesperson;

   e) Failure to make available at each location a copy of the entire registration statement and any addenda for inspection by a purchaser or by a representative of a government agency; and

   f) Failure to post a $10,000 bond, letter of credit, or certificate of deposit to secure Defendant's compliance with Chapter 302.

   g) Failure to appoint Texas' Secretary of State agent for service of process.

   h) Failure to provide the complete street address of both (i) the location from which each solicitation was made and (ii) Defendant's principal location.

68. Each solicitation is a separate violation for which Burger is subject to a penalty up to $5,000. *Id.* § 302.101, 302.302(a).

69. Defendants' violations of Chapter 302 harmed Plaintiff because she had to spend hours to track down information that should have been publicly available. To this day, Plaintiff does not have sufficient information about Burger, the locations from which the calls were made, and the persons responsible for them.

70. Plaintiff seeks to recover from Defendant "a civil penalty of not more than $5,000 *for each violation*."

71. Plaintiff is further "entitled to recover all reasonable costs prosecuting this action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $1,500 per call in statutory damages arising from the TCPA § 227(c) intentional violations jointly and severally against the corporation for six (6) calls;

E. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101;

F. An award to Ms. Gonzalez of damages, as allowed by law under the TCPA;

G.  An award to Ms. Gonzalez of interest, costs and attorneys' fees, as allowed by law and equity;

H.  Such further relief as the Court deems necessary, just, and proper.

Dated: April 3, 2023,

Respectfully submitted,

_____

Yazmin Gonzalez
Plaintiff, Pro Se
14205 Charles Pollock
El Paso, TX 79938
915-820-1859

## I.  Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: April 3, 2023,

_____

Yazmin Gonzalez
Plaintiff, Pro Se
14205 Charles Pollock
El Paso, TX 79938
915-820-1859